```
                    UNITED STATES DISTRICT COURT
                     WESTERN DISTRICT OF TEXAS
                        SAN ANTONIO DIVISION
```

```
J&J SPORTS PRODUCTIONS, INC.,        *
as Broadcast Licensee of the         *
March 8, 2014 "Toe to Toe"           *
Saul Alvarez v. Alfredo              *
Angulo Light Middleweight            *
Championship Fight Program;          *
                                     *
                Plaintiff,            *
                                     *
v.                                   *
                                     *   CIVIL NO. SA-17-CA-00162-DAE
MANDO'S RIVER SEAFOOD                *
RESTAURANT, INC.,                    *
individually, and d/b/a              *
Camaron Pelado Seafood Grill;        *
PABLO PADILLA, individually,         *
and d/b/a Camaron Pelado             *
Seafood Grill; and IRMA              *
PADILLA, a/k/a Irma Romero           *
Padilla, individually, and           *
d/b/a Camaron Pelado Seafood         *
Grill;                               *
                                     *
                Defendants.          *
```

**MEMORANDUM AND RECOMMENDATION**

Before the Court is plaintiff J&J Sports Productions, Inc.'s Motion for Default Judgment against Mando's River Seafood Restaurant, Inc., individually, and d/b/a Camaron Pelado Seafood Grill ("Mando's"); Pablo Padilla, individually, and d/b/a Camaron Pelado Seafood Grill ("Pablo"); and Irma Padilla a/k/a Irma Romero Padilla, individually, and d/b/a Camaron Pelado Seafood Grill ("Irma")(collectively "defendants"). (Docket no. 9). Upon consideration of the motion, and applicable law, the Court believes the plaintiff's motion should be **GRANTED**.

1

**PROCEDURAL AND FACTUAL HISTORY**

Plaintiff filed this lawsuit on March 1, 2017, pursuant to the Federal Communications Act of 1934, as amended ("Communications Act"), which combats against the piracy of radio and television signals. ***See* 47 U.S.C. §§ 553 and 605.** More specifically, plaintiff alleged that defendants, Mando, Pablo and Irma, illegally intercepted the closed-circuit telecast of the March 8, 2014 "Toe to Toe" Saul Alvarez v. Alfredo Angulo Light Middleweight Championship Fight Program (the "Event") and exhibited the Event in defendants' Establishment, Camaron Pelado Seafood Grill, located at 2918 W. Commerce, San Antonio, TX 78207 (the "Establishment"), without plaintiff's authorization and without paying the licensing fee to plaintiff. (Docket no. 1).

Defendants were served with the complaint on April 13, 2017. (Docket nos. 5, 6 and 7). On June 27, 2017, when defendants still had not responded, plaintiff filed a motion for entry of default and motion for default judgment. (Docket nos. 8 and 9). Plaintiff now requests that the Court enter a judgment against the defendants for:

> (1) Statutory damages pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II) from Defendants jointly and severally, in the amount of $10,000.00;
>
> (2) Additional damages pursuant to 47 U.S.C. § 605(e)(3)(C)(ii) from Defendants jointly and severally, in the amount of $50,000.00;

    (3) Attorneys' fees in the amount of one-third (1/3) of recovery, or alternatively the hourly time presented in the *Affidavit of David M. Diaz* (for prosecution of this case through default judgment); along with attorney's fees for post-trial and appellate services;

    (4) Costs and post-judgment interest at the highest lawful rate; and

    (5) Such other and further relief to which Plaintiff is entitled.

(Docket no. 9).  In support of its motion, plaintiff submits the following evidence: Exhibit "A": Affidavit of Thomas P. Riley, along with the following exhibits: 1. A copy of the Closed Circuit Television Agreement for the Event; 2. A copy of the Affidavit of Donald Ogle; and 3. A copy of the Rate Card for the Event; and Exhibit "B": Affidavit of David M. Diaz, along with the following Exhibits: 1. Resume of David M. Diaz, with Martindale Hubbell rating guide; and 2. Texas Lawyer 2014 Salary and Billing Report (published in TEXAS LAWYER July 28, 2014 edition) and Jeanne Graham, The Future of Fees (published in TEXAS LAWYER July 29, 2013 edition).  (Id.).  By order dated July 5, 2017, plaintiff's motion for default was referred to the undersigned.

## **LEGAL STANDARD**

    Federal Rule of Civil Procedure 55 provides that if a defendant fails to plead or otherwise respond to the complaint, the Clerk of Court must enter the party's default.  **FED.R.CIV.P.**

**55(a)**.  Once a default is entered, a plaintiff may seek entry of a default judgment against the defaulting defendant by either the clerk, if plaintiff's claim is for a sum certain or a sum that can be made certain by computation, or in all other cases, by the court.  **FED.R.CIV.P. 55(b)(1),(2)**.  The Court must accept well-pleaded facts as true but must determine whether those facts state a claim upon which relief may be granted.  *See Lewis v. Lynn*, 236 F.3d 766, 767 (5th Cir. 2001)(per curiam)(upholding district court's denial of default judgment because, even if true, the plaintiff's allegations would not support imposing liability against the defendants).  Thus, even if a defendant is technically in default, a plaintiff is not entitled to a default judgment as a matter of right.  *Id.*

A court may conduct a hearing to effectuate judgment, to conduct an accounting, determine the amount of damages, establish the truth of any allegation by evidence, or investigate any other matter.  **FED.R.CIV.P. 55(b)(2)**.  A hearing is not necessary, however, if the court finds within its discretion that it can rely on detailed affidavits and other documentary evidence to determine whether to grant a default judgment.  *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993).

**DISCUSSION**

*1. Liability*

Title 47 U.S.C. § 553(a)(1) provides that "[n]o person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law." Section 605(a) states that: "no person receiving, assisting in receiving, transmitting, or assisting in transmitting, any interstate or foreign communication by wire or radio shall divulge or publish the existence, contents, substance, purport, effect, or meaning thereof, except through authorized channels of transmission or reception"; "[n]o person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person"; "[n]o person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto"; and "[n]o person having received any intercepted radio communication or having become acquainted with the contents, substance, purport, effect, or meaning of such communication (or any part thereof) knowing that such communication was intercepted, shall

5

divulge or publish the existence, contents, substance, purport, effect, or meaning of such communication (or any part thereof) or use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto." **47 U.S.C. § 605**.

Under the Closed Circuit Television License Agreement, J&J Sports Productions, Inc. was granted the exclusive license to exhibit the live telecast of the Event at commercial closed-circuit television exhibition outlets, such as theaters, bars, clubs, lounges, and restaurants. (Docket no. 9, exh. A & A-1). The Agreement further provided that J&J Sports Products Ins. was entitled to charge a fee to sub-licensees receiving the signal of the Event for broadcast. (Id.). On March 8, 2014, Donald R. Ogle entered the Camaron Pelado Seafood Grill, located at 2918 West Commerce Street, San Antonio, Texas 78207, and observed the broadcast of the Event on four large TVs. (Id., exh. A-2). Ogle stated that during the time he was at defendants' Establishment, there were between 78 and 87 patrons also present. (Id.). Ogle estimated that the Establishment held approximately 80 persons. (Id.).

Additionally, movant presents the affidavit of Thomas P. Riley, who states the following: that defendants did not purchase the Event from plaintiff; that defendants were not otherwise authorized to receive the Event; that the transmission

of the Event originated via satellite and was electronically scrambled to prevent the unauthorized interception or receipt of the Event; and that defendant intercepted and received or assisted in the interception and receipt of the transmissions of the Event. (Docket no. 9, exh. A). Based on the foregoing, plaintiff has established liability pursuant to §§ **553** and **605.**

*2. Damages*

Under the Communications Act, an aggrieved party may be awarded statutory damages of up to $10,000 for violations of § 553 and up to $10,000 for violations of § 605.[1] **47 U.S.C. § 553(c)(3)(A)(ii)** and **§ 605(e)(3)(C)(i)(II)**. Here J&J Sports seeks the sum of $10,000.00 pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II). To substantiate this amount of damages, Thomas P. Riley, attorney for J&J Sports Productions, Inc., attests that J&J Sports Productions, Inc. is in the business of marketing and licensing commercial exhibitions of pay-per-view closed-circuit prizefight events and that a major source of plaintiff's revenue is the sublicense fees which it charges to authorized commercial establishments to broadcast these events. (Docket no. 9, exh. A). The sublicense fee is based on the capacity of the establishment, and was $1,600 for a commercial

---

[1] Although plaintiff alleges violations of both sections, a plaintiff may recover damages only under one of those sections. ***Time Warner Cable v. Barnes***, 13 F.Supp.2d 543, 548 (S.D.N.Y. 1998); *see also **Joe Hand Promotions, Inc. v. Elmore***, No. 11-CV-3761, 2013 WL 2352855, at *4 (E.D.N.Y. May 29, 2013).

establishment with a maximum fire code occupancy of 200 persons. (Docket no. 9, exh. A).  In addition to lost licensing fees, plaintiff states that defendants' patrons purchased food and/or drinks while viewing the Event and that but for defendants' pirating of the Event, defendants' patrons would have been required to view the Event at a commercial establishment authorized by J&J Sports Productions, Inc. to receive and exhibit the transmission.  (Id.).

Riley also states that, as a result of this theft by defendants, J&J Sports Productions, Inc. "has lost and will continue to lose as customers, legitimate commercial establishments which are unwilling and financially unable to compete with those unauthorized commercial establishments, such as Defendants' Establishment, which steal sports and other closed-circuit programming."  (Id.).  Further, [b]ecause these unauthorized commercial establishments offer the stolen programming to its patrons for no fee or for a fee  which is less than the authorized establishments may have charged, the legitimate commercial establishments with the right to broadcast closed-circuit programming cannot attract paying customers."  (Id.).  Riley maintains that "[a]s a result, the authorized commercial establishments fail to recover the sublicense fees that they paid, lose patrons and incur financial loss."  (Id.). Finally, Riley states that defendants have "eroded the base of

8

Plaintiff's customers" and that J&J Sports Productions, Inc. has suffered damage to its goodwill and reputation and loss of its right and ability to control and receive fees for the transmission of the Event. (Docket no. 9, exh. A). Based on the foregoing undisputed evidence, the Court believes that a statutory damage award of $10,000.00 under § 605(e)(3)(C)(i)(II) is warranted.

### *3. Willful Violation*

Plaintiff also seeks the sum of $50,000.00 pursuant to **47 U.S.C. § 605(e)(3)(C)(ii)**, which provides penalties for violations committed willfully and for purposes of commercial advantage or private financial gain. "Willfulness is defined as 'disregard for the governing statute and an indifference for its requirements,' *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 127 (1985), and is established by the fact that an event is broadcast without authorization." *Zuffa, L.L.C. v. Pryce*, 2013 WL 5310212, at *3 (N.D.N.Y. 2013)(*quoting* *Time Warner Cable of New York City v. Googies Luncheonette, Inc.*, 77 F.Supp.2d 485, 490 (S.D.N.Y.1999) ("Signals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems.")). Factors which courts use in determining whether a defendant's willful conduct warrants enhanced damages generally include: (1) repeated violations over an extended period of time; (2) substantial unlawful monetary gains; (3) advertising

9

the broadcast; and (4) charging an admission fee or charging premiums for food and drinks. *Zuffa, L.L.C.*, 2013 WL 5310212, at \*3; *J&J Sports Prods., Inc. v. Martinez*, 2013 WL 2147790, at \*9 (M.D.N.C. 2013).

In the present case, Riley states in his declaration that, as a willful violator, defendants must be held accountable for a substantial amount above the market value of the sublicense fees to broadcast the Event. (Docket no. 9, exh. A). Riley maintains that if defendants are not, other commercial establishments will be encouraged to violate the law knowing the full extent of their liability would not exceed what they would have to pay for a license on the open market. (Id.). He asserts that the award of damages must be sufficiently significant to deter defendants and other unauthorized commercial establishments from pirating protected communications. (Id.).

While the violation may have been willful, the Court has little evidence on which to base its determination as to additional damages for a willful violation. There is no indication defendants are a repeat offender. Further, in his affidavit, Ogle states that there was no cover charge to enter the Establishment and makes no mention of seeing signs of advertising inside or outside of the building for this event. (Id., exh. A-2). Additionally, although Ogle stated he took

10

three separate head counts during the two hours he was present, plaintiff provides no other evidence that the head counts of 78, 86, and 87 were unusually high for this Establishment or that the money obtained from the sale of food and drinks during the broadcasting of this Event was substantially greater than it would have been had defendant not illegally broadcasted the Event. (Docket no. 9, exh. A-2). Finally, although Riley seeks to hold defendants accountable for a substantial amount above the market value of the sublicense fees to broadcast the Event, here, the sublicense fee would have been $1,600.00. Thus, awarding plaintiff damages amounting to over six times the amount of the lawful sublicense fee will presumably serve to defendants in the future. Based upon the evidence, the Court believes that additional damages are unwarranted and should be denied.

### *4. Attorney Fees*

Plaintiff requests an award of attorney's fees and costs pursuant to §§ 553(c)(2)(C) and 605(e)(3)(B)(iii) and as provided in the Affidavit of David M. Diaz. (Docket no. 9, exh. B). Pursuant to Sections 553(c)(2)(C) and 605(e)(3)(B)(iii), the award of attorney' fees and costs is mandatory. Here, counsel for J&J Sports Productions, Inc. seeks an award of attorney's fees equal to one-third of the recovery. Alternatively, applying the lodestar, counsel for J&J Sports Productions, Inc.

states that he has reasonably expended or will expend a minimum of four hours on this litigation through the preparation of the motion for default judgment. (Docket no. 9, exh. B). Based on the factors and documents identified in his affidavit, it is counsel's opinion that a blended rate of $250.00 per hour is reasonable for anti-piracy litigation, considering his firm's experience with anti-piracy cases, for a total fee in the amount of $1,000. Counsel also seeks attorney fees for future appeals.

In *J&J Sports Prods. Rodriguez*, No. SA-13-CA-342-XR, 2013 WL 3967833, at *2 (W.D.Tex. July 31, 2013), the District Court awarded attorney's fees in a similar case based upon the lodestar and declined to award attorney fees for future appeals. *Id.* (citing *J&J Sports Prods., Inc. v. Cardenas*, No. SA-11-CV-1043-XR, 2012 WL 4434749 (W.D.Tex. Sept. 24, 2012)(also awarding attorney's fees based upon the lodestar method, as opposed to a one-third contingent fee)). The undersigned believes a similar award is warranted in the present case.

Accordingly, the undersigned believes that plaintiff should be awarded $1,000.00 for reasonable attorney's fees incurred based upon the lodestar method, but should be denied an award for attorney's fees and cost for possible future appeals.

## CONCLUSION

For the foregoing reasons, plaintiff's motion should be **GRANTED**. (Docket no. 9).

**RECOMMENDATION**

It is the recommendation of the Magistrate Judge that the plaintiff's motion be **GRANTED**.

**Instructions for Service and
Notice of Right to Object**

The District Clerk shall serve a copy of this Memorandum and Recommendation on all parties either electronically or by mailing a copy by certified mail, return receipt requested. Pursuant to **28 U.S.C. § 636(b)(1)** and **FED.R.CIV.P. 72(b)(2)**, any party who desires to object to this Memorandum and Recommendation must serve and file specific written objections within 14 days after being served with a copy. ***Such party shall file the objections with the District Clerk and serve the objections on all other parties and the Magistrate Judge***. A party=s failure to file written objections to the findings, conclusions, and recommendations contained in this report within 14 days after being served with a copy shall bar that party from ***de novo*** review by the District Judge of those findings, conclusions, and recommendations and, except on grounds of plain error, from appellate review of factual findings and legal conclusions to which the party did not object, which were accepted and adopted by the District Court. ***Thomas v. Arn***, 474 U.S. 140, 150 (1985); ***Douglass v. United Servs. Auto. Ass'n***, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

**SIGNED** July 30, 2017.

                                            _____
                                            **JOHN W. PRIMOMO**
                                            **UNITED STATES MAGISTRATE JUDGE**